# United States Court of Appeals for the Federal Circuit

2008-3244

KYLE S. FELLHOELTER,

Petitioner,

v.

DEPARTMENT OF AGRICULTURE,

Respondent.


Margaret Beebe Held, Held Law Firm, of Knoxville, Tennessee, argued for petitioner.

Allison Kidd-Miller, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With her on the brief were Jeanne E. Davidson, Director, and Martin F. Hockey, Jr., Assistant Director.

Appealed from: Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

2008-3244

KYLE S. FELLHOELTER

Petitioner,

v.

DEPARTMENT OF AGRICULTURE,

Respondent.

Petition for review of the Merit Systems Protection Board in
AT0752070626-I-1.

_____

DECIDED:  June 15, 2009

_____

Before MICHEL, Chief Judge, BRYSON, Circuit Judge, and CUDAHY, Senior Circuit
Judge.*

BRYSON, Circuit Judge.

Kyle S. Fellhoelter petitions for review of a decision of the Merit Systems

Protection Board affirming his removal from a supervisory position with the United

States Department of Agriculture ("USDA").  We affirm.

_____

\* The Honorable Richard D. Cudahy, Senior Circuit Judge, United States Court
of Appeals for the Seventh Circuit, sitting by designation.

I

Mr. Fellhoelter was an audit manager in a USDA office in Knoxville, Tennessee. He worked in the Federal Milk Marketing program, a USDA program designed to stabilize conditions in the market for dairy products and to prevent regional shortages in the supply of milk. Mr. Fellhoelter was charged with supervising a small staff of field auditors who periodically examined the sales, production, and inventory of milk handlers in a region encompassing Tennessee and seven nearby states.

In 2002, Mr. Fellhoelter grew concerned that two regulated entities—Valley Milk Products LLC ("Valley Milk") and Maryland & Virginia Milk Producers Cooperative Association, Inc. ("MD-VA Milk")—were misrepresenting the grade of milk they had processed, paying less than the regulated purchase price for raw milk, and claiming credit for milk supplied by other companies. Mr. Fellhoelter reported his suspicions to Harold Friedly, Market Administrator for the Appalachian Region, and William Newell, Chief of the Order Operations Branch in the Dairy Programs Division of the USDA. Messrs. Friedly and Newell acknowledged that "little [was] wrong with most of the basic facts" alleged by Mr. Fellhoelter, but they drew a different conclusion from those facts. They determined that the practices identified by Mr. Fellhoelter were consistent with federal milk marketing regulations and that any remedial action, if appropriate, was outside the scope of the USDA's limited regulatory authority in the area. Mr. Friedly urged Mr. Fellhoelter not to take any further action, particularly since many of the documents that formed the basis for Mr. Fellhoelter's allegations contained confidential and proprietary information protected by statute.

Dissatisfied with management's response, Mr. Fellhoelter began pursuing other avenues to address what he perceived to be fraudulent conduct. In May 2003, Mr. Fellhoelter filed a report with the USDA's Office of Inspector General. In that report, he described the allegedly fraudulent practices of Valley Milk and MD-VA Milk, and he also alleged fraud and mismanagement by Mr. Friedly. The Office of Inspector General subsequently declined to initiate an enforcement proceeding, finding that Mr. Newell had "adequately addressed" Mr. Fellhoelter's allegations. On July 8, 2005, Mr. Fellhoelter brought a qui tam action against Valley Milk, MD-VA Milk, and the USDA in the United States District Court for the Eastern District of Tennessee. The complaint incorporated much of the substance of Mr. Fellhoelter's earlier report to the Office of Inspector General. In addition, it included a claim of unlawful retaliation under the Whistleblower Protection Act ("WPA"). The qui tam action was later dismissed for violations of the sealing provisions of the False Claims Act and for failure to allege a claim involving the payment of government funds.

In mid-2006, while the qui tam action was pending before the district court, Mr. Friedly recommended closing the Knoxville office and consolidating the regional auditing group in the regional headquarters in Louisville, Kentucky. Mr. Friedly explained to his superiors that the dairy industry was in the process of eliminating regional production facilities and that "[t]he work performed by the Audit Group in the Knoxville field office [had] changed with the work moving away from Knoxville." On December 28, 2006, the Secretary of Agriculture approved the recommendation to close the Knoxville office. Rather than implementing a reduction in force, Mr. Friedly offered many of the Knoxville employees, including Mr. Fellhoelter, reassignment to the Louisville office on the same

terms and conditions as their current employment. Mr. Fellhoelter declined the reassignment and was therefore removed from his position as of April 14, 2007.

Mr. Fellhoelter appealed the removal action to the Merit Systems Protection Board, claiming that the USDA had closed the Knoxville office in retaliation for his whistleblowing activities. The administrative judge who was assigned to the case directed the parties to conduct discovery in accordance with the procedures set forth at 5 C.F.R. §§ 1201.71-1201.85. Two weeks after receiving the government's responses to his initial discovery requests, Mr. Fellhoelter moved for an order compelling the production of documents that pertained to his supervisors' alleged threats of reprisal against him. The administrative judge denied that motion as untimely and, in the alternative, as "lacking merit." Following discovery, the administrative judge decided to reverse the normal order of proof in whistleblowing cases by holding a hearing on the USDA's affirmative defense that the Knoxville office would have been closed (and Mr. Fellhoelter reassigned) even in the absence of any protected disclosures.

At the conclusion of that hearing, the administrative judge found that the Knoxville office would have been closed regardless of Mr. Fellhoelter's whistleblowing activity and therefore upheld the USDA's removal decision. The administrative judge found that the agency had a "strong basis" for its decision to close the Knoxville office. The evidence, the administrative judge concluded, showed that office closures in the Dairy Program were "relatively frequent and dependent to a great extent on the financial resources and expenditures available in a given location." The administrative judge found that the agency had shown "the existence of a deteriorating financial situation that was solved by a reduction in expenditures" through the consolidation of offices, and that

at the centralized location in Louisville the agency had access to more support facilities and better office space, which would "facilitate more efficient audit work."

The full Board denied review of the administrative judge's decision. Mr. Fellhoelter now petitions for review by this court.

II

Mr. Fellhoelter does not disagree that substantial evidence in the record supports the administrative judge's ultimate conclusion that the USDA would have directed his reassignment from Knoxville to Louisville even in the absence of his whistleblowing activity. Rather, Mr. Fellhoelter's principal contention is that the record for decision was incomplete because the administrative judge erroneously precluded the admission of evidence pertaining to Mr. Friedly's motive to retaliate against him because of his protected disclosures. Mr. Fellhoelter challenges approximately 50 evidentiary rulings, all of which he characterizes as precluding evidence of Mr. Friedly's motive to retaliate. The collective effect of those evidentiary rulings, Mr. Fellhoelter argues, was to deprive him of a meaningful opportunity to present his claim that the Knoxville office was closed in retaliation for his disclosures. Mr. Fellhoelter therefore seeks a new hearing at which he can complete the record with evidence excluded by the administrative judge.

A

The WPA prohibits any federal agency from taking, failing to take, or threatening to take or fail to take, any personnel action because of the disclosure of information by an employee or applicant for employment that the employee or applicant reasonably believes to be evidence of a violation of law, rule, or regulation, gross mismanagement or a waste of funds, or a substantial and specific danger to public health or safety. 5

U.S.C. § 2302(b)(8). In order to make out a prima facie case under the WPA, the employee or applicant must establish that he made a protected disclosure and that the disclosure was a contributing factor in an adverse action against him. 5 U.S.C. § 1221(e)(1). If the employee or applicant makes out a prima facie whistleblower claim, the agency is given an opportunity to prove, by clear and convincing evidence, that it would have taken the same personnel action in the absence of the protected disclosure. 5 U.S.C. § 1221(e)(2); see also Marano v. Dep't of Justice, 2 F.3d 1137, 1141 (Fed. Cir. 1993).

In determining whether the agency would have taken the same personnel action in the absence of the protected disclosure, the Board considers the following three factors: (1) the strength of the agency's evidence in support of its personnel action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes or has taken similar actions against similarly situated employees who are not whistleblowers. See Geyer v. Dep't of Justice, 70 M.S.P.R. 682, 688 (1996), aff'd, 116 F.3d 1497 (Fed. Cir. 1997); see also Carr v. Soc. Sec. Admin., 185 F.3d 1318, 1323-24 (Fed. Cir. 1999) (approving the Geyer factors). Because the WPA does not mandate any particular sequence for trying the elements of a whistleblower case, we have tacitly approved of the Board's practice, in appropriate cases, of first addressing the agency's affirmative defense and then, if necessary, turning to the question whether the petitioner has made out a prima facie whistleblower claim. See Clark v. Dep't of the Army, 997 F.2d 1466, 1470-71 (Fed. Cir. 1993); see also Kalil v. Dep't of Agric., 479 F.3d 821, 824-25 (Fed.

Cir. 2007); Greenspan v. Dep't of Veterans Affairs, 464 F.3d 1297, 1303-04 (Fed. Cir. 2006).

In this case, the administrative judge decided it would be most efficient to hear evidence as to the agency's affirmative defense first and then, if necessary, to hear evidence as to the other elements of the claim. Because the administrative judge limited the hearing to the agency's affirmative defense, he repeatedly sustained the government's objections to the introduction of evidence going to whether there was a prima facie case of whistleblowing.

The factual dispute between the parties centered on whether Mr. Fellhoelter's supervisors would have closed the Knoxville office despite his whistleblowing activity. One of the factors for the administrative judge to consider in ruling on the government's affirmative defense is the strength of any retaliatory motive on the part of the officials who were involved in the decision in question. See Carr, 185 F.3d at 1323-24. Because direct evidence of a deciding official's retaliatory motive is rare, petitioners are entitled to rely on circumstantial evidence giving rise to an inference of impermissible intent. See Webster v. Dep't of Army, 911 F.2d 679, 689-90 (Fed. Cir. 1990); see also Sheehan v. Dep't of Navy, 240 F.3d 1009, 1014 (Fed. Cir. 2001). In some cases, evidence of retaliatory motive is also relevant to the petitioner's prima facie case; for example, evidence of an employee's assertions of misconduct by a supervisor can be relevant to whether the employee has made a protected disclosure and also whether the supervisor has a strong motivation to retaliate.

Mr. Fellhoelter argues that the administrative judge improperly rejected all evidence going to the reasonableness of his belief in the mismanagement of the Milk

Order; in his view, even though that evidence was relevant to his prima facie case, it also tended to undermine the government's affirmative defense and therefore should have been admitted. We agree with Mr. Fellhoelter that the administrative judge was not free to disregard particular evidence that was relevant to a material issue merely because it was also relevant to a separate issue that was not contested at the hearing. Thus, it would have been improper for the administrative judge to exclude evidence solely on the ground that it related to the reasonableness of Mr. Fellhoelter's belief in the mismanagement of the Milk Order. However, Mr. Fellhoelter has not identified any exclusion of evidence that was predicated on that rationale. As we discuss in detail below, with respect to many of the evidentiary rulings at issue in this case the administrative judge exercised sound discretion by excluding evidence on the grounds that it was nonprobative, cumulative, or likely to unduly delay the proceedings. With respect to other rulings, we conclude that the exclusion of evidence, even if erroneous, was not prejudicial and thus does not warrant a remand for a new hearing.

B

Mr. Fellhoelter contends that the administrative judge erroneously excluded evidence of Mr. Friedly's knowledge that Valley Milk's practices were fraudulent. During the hearing, the government objected to the introduction of testimony about how Mr. Fellhoelter first learned of the alleged fraud. Counsel for Mr. Fellhoelter argued that her questioning would be directed to "the documentation that Mr. Fellhoelter provided to Mr. Friedly and when [he] provided it, and how it was obtained." Mr. Fellhoelter characterizes the administrative judge's rejection of that rationale as a refusal to hear evidence of Mr. Friedly's "knowledge that the law had been violated."

While Mr. Fellhoelter's investigation into the alleged fraud may have been relevant to the reasonableness of his disclosure, we agree with the administrative judge that the evidence was not relevant to the government's affirmative defense. In particular, we disagree with counsel's suggestion that Mr. Friedly's general awareness of the regulated entities' conduct necessarily gave rise to an inference that he knew the conduct was unlawful. Mr. Friedly and the USDA never disavowed knowledge of Mr. Fellhoelter's reports; instead, they maintained throughout that the reported activities either were not unlawful or were outside the jurisdiction of the USDA. Because Mr. Fellhoelter did not purport to introduce evidence that Mr. Friedly's stated position was contrary to his subjective beliefs, we sustain the administrative judge's ruling on the ground that the testimony in question was not probative of the factual issues to be resolved at the hearing.

C

Mr. Fellhoelter next complains that the administrative judge denied him the opportunity to submit "documentation of Mr. Friedly's involvement in the fraud." At the hearing, the administrative judge declined to hear testimony concerning Mr. Fellhoelter's efforts to collect certain documents from Valley Milk that were later used to support his allegations of fraud. On appeal, Mr. Fellhoelter characterizes that decision as an exclusion of documents inculpating Mr. Friedly in the fraud.

The administrative judge did not abuse his discretion in ruling that the documentation of Valley Milk's practices was not particularly relevant to whether the Knoxville office would have been closed in the absence of Mr. Fellhoelter's protected disclosures. While any documents that evidenced Mr. Friedly's involvement in the

alleged fraud would have been highly material to that issue, Mr. Fellhoelter has never suggested that any of the proffered materials would have revealed Mr. Friedly's complicity or that the testifying witness had personal knowledge of the incriminating nature of the documents. We therefore uphold the administrative judge's ruling excluding evidence of Mr. Fellhoelter's investigation into the alleged fraud.

D

Mr. Fellhoelter also challenges the exclusion of testimony that Mr. Friedly personally authorized the practices adopted by Valley Milk and MD-VA Milk. Rick Holt, an audit manager with the USDA, was asked at the hearing whether the President of Valley Milk had admitted paying less than the regulatory price for received milk. That question drew a relevance objection from the government. Counsel for Mr. Fellhoelter responded that she would establish Mr. Friedly's approval of Valley Milk's practices through an affidavit filed by Valley Milk's president in the qui tam action before the district court. Mr. Fellhoelter argues that the administrative judge's decision to sustain the objection should be understood as precluding Mr. Holt from testifying that Mr. Friedly had "personally approved the illegal practices of Valley Milk."

Proof that Valley Milk engaged in practices that Mr. Fellhoelter considered illegal would have been probative of the reasonableness of Mr. Fellhoelter's belief in the existence of a fraud. However, that evidence was only tangentially related to the question whether the consolidation of the Knoxville and Louisville office was inevitable. Moreover, there was no evidence that Mr. Holt had personal knowledge of either the existence of the affidavit or the conversation in which Mr. Friedly allegedly assured

Valley Milk's executives that their practices were legal. Thus, we find no error in the administrative judge's decision with respect to the question posed to Mr. Holt.

E

Mr. Fellhoelter next argues that the administrative judge improperly excluded evidence that Mr. Friedly had retaliated against Michael Baker, another Knoxville office employee who had made similar allegations against Valley Milk and MD-VA Milk. According to Mr. Fellhoelter, Mr. Friedly's reaction to the disclosures by another employee would have provided invaluable insight into his motivation for closing the Knoxville office.

The relevance of that evidence, however, turned on the nature of Mr. Baker's disclosures, which was not apparent from the record, as the administrative judge noted. Moreover, Mr. Baker failed to appear at the hearing. Although the administrative judge issued a subpoena to compel his appearance, the record does not reflect that Mr. Fellhoelter effected service of that subpoena. Given the unavailability of Mr. Baker, the administrative judge did not err in concluding that developing a full picture of Mr. Baker's experience in the Knoxville office through third-party evidence would have required substantial trial time and would have had little probative value.

F

Mr. Fellhoelter also argues that the administrative judge erred in excluding evidence of other civil and administrative proceedings involving allegations of misconduct against Mr. Friedly. Mr. Fellhoelter argues that the development of the record on those issues was critical to proving Mr. Friedly's retaliatory motive.

Evidence of other unspecified, but apparently unrelated, claims of misconduct could not, of course, have been probative of Mr. Friedly's motives if those claims were unsubstantiated, and Mr. Fellhoelter did not suggest that he could prove that those allegations were true. Even if the claims of unrelated misconduct were well founded, evidence of that sort would not have provided significant support to the contention that the USDA's Knoxville office was closed in retaliation for Mr. Fellhoelter's whistleblowing. Accordingly, we conclude that the administrative judge did not err in barring Mr. Fellhoelter from conducting a collateral inquiry into claims of misconduct by Mr. Friedly.

G

According to Mr. Fellhoelter, the administrative judge improperly excluded testimony of "Mr. Friedly's attitude toward Mr. Fellhoelter's initial report of fraud." Mr. Fellhoelter calls our attention to the point in the hearing when Mr. Holt was asked to describe Mr. Friedly's reaction upon learning of the alleged fraud. From our review of the hearing transcript, it appears the administrative judge overruled the government's objection to that testimony and permitted Mr. Holt to answer the question. Thus, there is no basis for the assertion that Mr. Fellhoelter was precluded from inquiring into Mr. Friedly's response to the whistleblowing activity.

Mr. Fellhoelter also claims to have been prevented from questioning Mr. Friedly "regarding his efforts to remove Mr. Fellhoelter from access to information that would show Mr. Friedly's personal involvement." As support for that assertion, Mr. Fellhoelter cites a portion of the hearing transcript in which Mr. Newell (not Mr. Friedly) was asked about the USDA's obligation to make its employees available to testify in civil

proceedings. We fail to see how that testimony would have been probative of Mr. Fellhoelter's access to documents that inculpated Mr. Friedly.

## III

We next address the various evidentiary rulings that, even if erroneous, were not sufficiently prejudicial to warrant reversal and a new hearing. Much of the evidence at issue in this appeal was duplicative of other testimonial and documentary evidence that was admitted into the record over the course of the proceedings. Because that evidence went to issues as to which there was ample other evidence or to issues that were not disputed at the hearing, Mr. Fellhoelter cannot show that he was prejudiced by the challenged rulings. See Curtin v. Office of Pers. Mgmt., 846 F.2d 1373, 1379 (Fed. Cir. 1988); see also Chambers v. Dep't of the Interior, 515 F.3d 1362, 1371 (Fed. Cir. 2008); Barrett v. Soc. Sec. Admin., 309 F.3d 781,786 (Fed. Cir. 2002).

For example, Mr. Fellhoelter contends that the administrative judge erred in excluding evidence that Mr. Friedly had a statutory duty to disclose regulatory infractions by Valley Milk and MD-VA Milk. However, the administrative judge received the relevant portions of the USDA's internal manuals describing an auditor's job responsibilities, which refer to the duty to "report fraud, illegal acts, violations of provisions of contracts or grant agreements, and abuse directly to parties external to the audited entity." Moreover, when Mr. Newell was asked to describe the types of penalties imposed on employees who knowingly fail to disclose fraudulent practices, he disclaimed knowledge of any specific criminal or statutory penalties, but he noted that the employee could be subject to "disciplinary action for failure to carry out duties and reporting to the supervisor." Finally, Mr. Friedly himself acknowledged that, as a USDA

employee he had "a duty to report violations of the law to the appropriate authorities." Thus, the administrative judge's exclusion of some testimony relating to the auditors' obligation to disclose illegal activities was harmless because the precluded testimony was cumulative of other evidence in the record.

We likewise reject the argument that Mr. Fellhoelter was prejudiced by the administrative judge's decision to exclude the documents he submitted to the Department of Justice and the USDA Office of Inspector General. According to Mr. Fellhoelter, those reports would have shown that Mr. Friedly was the subject of Mr. Fellhoelter's allegations of fraud and mismanagement. At the hearing, however, Mr. Fellhoelter was given substantial leeway as he explained how he had publicly implicated Mr. Friedly in the alleged fraud. Several witnesses attested that Mr. Fellhoelter "took on the boss" and "made a complaint against Mr. Friedly to the Office of Inspector General." The administrative record also contains a number of e-mails from Mr. Fellhoelter to senior members of the USDA alleging "management malfeasance including gross government waste." In its post-hearing submissions to the administrative judge, the government conceded that, by June 2003, Mr. Fellhoelter had "amended his allegations to include his belief that USDA management were also at fault for not reacting to his concerns." Moreover, evidence in the record shows that Mr. Friedly was aware of the allegations Mr. Fellhoelter had made against him in his report to the Office of Inspector General and in his qui tam action in the Eastern District of Tennessee. Thus, even assuming that the administrative judge erred in denying admission of Mr. Fellhoelter's reports to the Office of Inspector General and the Department of Justice, that ruling was not prejudicial.

2008-3244                                  14

Mr. Fellhoelter claims that he was prohibited from questioning Mr. Friedly "regarding his efforts to remove Mr. Fellhoelter from access to information that would show Mr. Friedly's personal involvement." As we concluded above, the citations in Mr. Fellhoelter's brief do not support the contention that Mr. Fellhoelter was precluded from introducing that testimony. With respect to Mr. Fellhoelter's related claim that he was "removed from access" to any information relevant to his claims, he admitted that he copied more than 1500 agency documents that formed the basis for his <u>qui tam</u> action and his report to the Office of Inspector General. To the extent Mr. Fellhoelter suggests that Mr. Friedly made an effort to limit his access to documentation of the alleged fraud, Mr. Friedly acknowledged instructing Mr. Fellhoelter to respect the confidentiality of the documents in the possession of the USDA and to not take his grievances outside the agency. The evidence further showed that shortly after the <u>qui tam</u> action was filed, Mr. Friedly barred Mr. Fellhoelter from participating in the audits of the regulated entities that were named as defendants in the action. In light of that evidence, the testimony sought by Mr. Fellhoelter would have been cumulative; any error by the administrative judge in restricting his efforts to offer evidence on that issue was thus harmless.

Mr. Fellhoelter complains that the administrative judge improperly refused to permit him to impeach Mr. Newell with an affidavit that Mr. Newell submitted in the <u>qui tam</u> action. That argument was first raised before us in Mr. Fellhoelter's reply brief, and it is therefore not properly before us. <u>See</u> <u>United States v. Ford Motor Co.</u>, 463 F.3d 1267, 1276-77 (Fed. Cir. 2006). In any event, we find no merit in the claim. Counsel for Mr. Fellhoelter sought to use the affidavit to impeach Mr. Newell's statement that he did not "approve the organizational changes that involved the closure of the Knoxville

office." Mr. Newell's testimony that he participated in the decision to consolidate the Knoxville and Louisville offices was corroborated by two witnesses who detailed the extent of Mr. Newell's involvement in the decisional process. Ms. Taylor, for example, recalled that she and Mr. Newell played an advisory role in the discussions leading up to the closure of the Knoxville office. She emphasized, however, that Mr. Friedly was the only individual with the authority to consolidate operations in Louisville. Mr. Friedly concurred that Mr. Newell was "aware of the situation" and provided some "advice and expertise" but that he did not take part in the actual decision to effect the reorganization. Thus, even if Mr. Fellhoelter's counsel had succeeded in impeaching Mr. Newell's testimony, it is unlikely that the impeachment would have affected the administrative judge's decision to credit the statements of Ms. Taylor and Mr. Friedly as to who participated in the decision to close the Knoxville office. Moreover, it is not clear why it would have been in Mr. Fellhoelter's interest to impeach Mr. Newell's testimony that he was not responsible for the closure decision. Mr. Fellhoelter has thus not shown that the restriction of his effort to impeach Mr. Newell's testimony prejudiced him.

Finally, Mr. Fellhoelter argues that the administrative judge committed reversible error by excluding evidence of Mr. Friedly's "reaction to Mr. Fellhoelter's report to another branch of USDA." The administrative judge sustained an initial objection to Mr. Friedly testifying about his impression of Mr. Fellhoelter's disclosures to the Assistant to the Deputy Director of the USDA. However, counsel for Mr. Fellhoelter persisted in her questioning without drawing any further objections from the government. Mr. Friedly eventually admitted instructing Mr. Fellhoelter not to convey his suspicions to anyone within the agency, including the USDA Compliance Officer and the Assistant to the

Deputy Director of the USDA. The administrative judge's ruling on the government's objection, even if erroneous, was therefore harmless.

IV

As an alternative basis for a remand and rehearing, Mr. Fellhoelter asserts that the administrative judge erred in denying his motion to compel the production of documents by the USDA. Mr. Fellhoelter acknowledges that the motion to compel was not filed "within 10 days of the date of service of objections," as required by 5 C.F.R. § 1201.73(d)(4), and that he did not attempt to show good cause for the delay. He nonetheless insists that the untimeliness of the motion did not justify the administrative judge's decision to deny it. Citing the Board's decision in White v. Government Printing Office, 108 M.S.P.R. 355 (2008), Mr. Fellhoelter argues that an administrative judge is required to reach the merits of a motion to compel if the requested discovery is "highly relevant" to the petitioner's whistleblower claim.

Mr. Fellhoelter overlooks that in White, the Board found that the administrative judge had erred as a matter of law in setting a time period for filing motions to compel that was more restrictive than the period provided by 5 C.F.R. § 1201.73. The Board concluded that a remand was appropriate because the petitioner had been prejudiced by the erroneous ruling: The administrative judge had refused to entertain a motion that was both timely under the regulation and was directed to materials "reasonably calculated to lead to the discovery of admissible evidence." White, 108 M.S.P.R. at 359-60. The materiality of the excluded discovery materials was merely one factor to be considered in crafting an appropriate remedy for the administrative judge's erroneous legal conclusion that the discovery deadlines set forth in 5 C.F.R. § 1201.73 were not

binding. Nowhere did the Board suggest that a violation of discovery deadlines may be overlooked as long as the requested discovery was "highly relevant" to the petitioner's claim. Thus, the Board's decision in White has no bearing on the timeliness of Mr. Fellhoelter's motion to compel.

Having conceded the absence of good cause for the late filing, Mr. Fellhoelter cannot show that the administrative judge abused his discretion in denying the motion to compel as untimely. See, e.g., Jolley v. Dep't of Homeland Sec.,105 M.S.P.R. 104, 112 n.5 (2007); Gibb v. Dep't of the Treasury, 88 M.S.P.R. 135, 146 (2001); Ludlum v. Dep't of Justice, 87 M.S.P.R. 56, 59 (2000); Golden v. U.S. Postal Serv., 60 M.S.P.R. 268, 271 (1994). Accordingly, we have no reason to reach either the merits of Mr. Fellhoelter's motion or the issue whether the alleged error was harmless.

The two-day hearing before the administrative judge was vigorously contested. In the course of the proceedings, the administrative judge was repeatedly called upon to make rulings regarding the pertinence of particular evidence to the issues to be resolved at the evidentiary hearing. After close examination of Mr. Fellhoelter's numerous claims of error, we are persuaded that although the administrative judge played an active role in controlling the proceedings, he conducted the hearing fairly. To the extent that certain of the administrative judge's rulings may have been unduly restrictive, those rulings have not been shown to be prejudicial. We therefore uphold the Board's ruling rejecting Mr. Fellhoelter's whistleblower claim.

Each party shall bear its own costs for this appeal.

AFFIRMED.