NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**RICK D. SALERNO,**
*Petitioner*

**v.**

**DEPARTMENT OF THE INTERIOR,**
*Respondent*

---

2017-1145

---

Petition for review of the Merit Systems Protection Board in No. SF-1221-14-0756-B-1.

---

Decided: November 17, 2017

---

RICK D. SALERNO, Manassas, VA, pro se.

MICHAEL D. SNYDER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., DEBORAH A. BYNUM.

---

Before NEWMAN, MAYER, and O'MALLEY, *Circuit Judges.*

NEWMAN, *Circuit Judge*.

Rick D. Salerno appeals the Final Decision of the Merit Systems Protection Board (MSPB or Board) affirming the Department of the Interior's decision to suspend him for 30 days from his employment with the Bureau of Land Management (BLM).[1]  The suspension was based on Salerno's allegedly improper use of a personal credit card for official purchases.

Mr. Salerno argues that the suspension was in retaliation for his having filed a whistleblowing disclosure to the Office of Special Counsel (OSC).  He also alleged other improprieties in connection with his suspension.  The administrative judge (AJ) to whom the matter was assigned denied his request for witnesses or deposition evidence regarding matters other than the issue of his credit card use.  On appellate review, we conclude that the evidence before the MSPB supported the 30-day suspension; that decision is affirmed.

## BACKGROUND

Mr. Salerno was employed as a Telecommunications Specialist with the BLM in Moreno Valley, California.  On January 10, 2013, Mr. Salerno received a letter of reprimand, instructing that all work-related purchases must be made with his government purchase card and that he must receive prior authorization before making such purchases, which would include receipt of a fund code for each purchase.  In February of 2013, Mr. Salerno submitted a disclosure to OSC describing asserted violations of law, rule, or regulation, relating primarily to the BLM's alleged non-compliance with communication security laws and regulations.

---

[1]    *Salerno v. Dep't of the Interior*, MSPB Docket No. SF-1221-14-0756-B-1 (Sept. 1, 2016).

On December 11, 2013, the BLM imposed a 2-day suspension on Mr. Salerno, stating that he had again violated the instructions to use only his government purchase card for official purchases. On January 9, 2014, Mr. Salerno informed his supervisor that he "chose to purchase" a radio antenna for the Ridgecrest Chief Ranger "using my personal credit card" in order to expedite the purchase and to have the antenna on hand for his scheduled return to Ridgecrest the following week. At the time of the purchase, Mr. Salerno had neither requested nor received a fund code, but this was remedied the afternoon of the purchase, and the charge was promptly transferred to the government purchase card.

On January 27, 2014, the District Fire Management Officer proposed to suspend Mr. Salerno for 30 days for failure to follow instructions relating to official purchases. Mr. Salerno provided a written reply, explaining the reason for his action. The 30-day suspension was duly imposed, and was served beginning May 5, 2014. After completion of the suspension and his return to service, Mr. Salerno resigned his position on August 20, 2014.

Mr. Salerno brought an individual right of action (IRA) appeal to the MSPB, alleging retaliation in violation of the Whistleblower Protection Act (WPA). The Board, applying 5 U.S.C. § 1221(e)(1) and the "knowledge/timing" test, held that Mr. Salerno had made a non-frivolous allegation that his 2013 disclosure to the OSC was a contributing factor to the 30-day suspension.

The AJ held a hearing, concentrating on the question of whether the agency would have taken the same action in the absence of the protected disclosure. The AJ declined to receive evidence concerning the content of Mr. Salerno's whistleblowing disclosure, and denied his requests for discovery related to the security concerns he had reported to OSC. On this appeal, Mr. Salerno does not dispute the facts concerning credit card usage, and

presses the import of his OSC disclosure as well as claims of a hostile work environment.

The AJ held, after a hearing in which Mr. Salerno and agency witnesses testified, that the agency had established, by clear and convincing evidence, that it would have taken the same action in the absence of the protected disclosure. The Board affirmed, and Mr. Salerno appeals.

## DISCUSSION

We review the Board's decision to determine whether it was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *see Whitmore v. Dep't of Labor*, 680 F.3d 1353, 1366 (Fed. Cir. 2012). "Substantial evidence . . . means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938).

The AJ received testimony from the BLM supervisors and deciding officials that they were either unaware of the OSC disclosure or unaware of its contents. There was no dispute as to the facts of the asserted lapses concerning advance authorization and use of the government card for official purchases. Mr. Salerno testified, without contradiction, that he obtained the requisite authorization later on the same day as the purchase of the antenna ($58) and promptly instructed the vendor to change the charge from his personal card to his government card. He justified his action by the need to expedite ordering the requisite antenna, in order to have it on hand for his forthcoming trip to Ridgecrest.

A protected disclosure does not shield employees from the consequences of wrongful conduct, unless the protect-

ed disclosure is a factor in the action taken. *See* 5 U.S.C. § 1221(e)(2); *Carr v. Soc. Sec. Admin.*, 185 F.3d 1318, 1325–26 (Fed. Cir. 1999) ("[T]he WPA is not meant to protect employees from their own misconduct"; rather, "the WPA shields an employee only to the extent the record supports a finding that he would not have been disciplined except for his status as a whistleblower") (internal citations and quotations omitted). The AJ and Board applied the factors set forth in *Carr* to determine whether the agency would have taken the same personnel action in the absence of the protected disclosure: (1) the strength of the agency's evidence in support of its personnel action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes or has taken similar actions against similarly situated employees who are not whistleblowers. *See Carr*, 185 F.3d at 1323; *see also Miller v. Dep't of Justice*, 842 F.3d 1252, 1257 (Fed. Cir. 2016) (applying the *Carr* factors); *Fellhoelter v. Dep't of Agric.*, 568 F.3d 965, 971 (Fed. Cir. 2009) (same).

With respect to the first *Carr* factor, the parties do not dispute the facts that led to the January 10, 2013 reprimand, the December 11, 2013 two-day suspension, or those relating to the January 9, 2014 purchase of the antenna. The Associate District Manager testified that, in his view, this third violation, although able to be promptly corrected, showed that early instructions to comply with the rules had not been effective, and that the 30-day suspension was needed "to get Mr. Salerno's attention." SAppx21. The government refers to testimony that Mr. Salerno was a person of independent mind, who would do what he believed to be "morally right." Gov't Br. 16.

With respect to the second *Carr* factor, on whether there was a motive to retaliate, the AJ deemed credible the testimony of the supervisor who proposed Mr. Saler-

no's suspension, who testified that he was not aware of Mr. Salerno's OSC disclosure. SAppx19–20. Mr. Salerno's supervisors also testified that they were not aware that he had filed an OSC disclosure or its content, although it was not disputed that he had so informed his immediate work leader. *Id.* The AJ stated that this testimony was credible. *Id.* at 20–21. A BLM human resources specialist testified that a 30-day suspension was the lowest table penalty for a third infraction. *Id.* at 17. The AJ also received testimony concerning uneasy job-site relationships, and that Mr. Salerno's job performance had consistently been rated "fully successful." *Id.* at 19.

On the third *Carr* factor, the AJ heard from the Associate District Manager that Mr. Salerno was the only employee whose failure to follow instructions was not corrected by a 2-day suspension. *Id.* at 35.

Mr. Salerno on appeal stresses the concerns that were the subject of his whistleblowing, and mentions several other areas of concern regarding his work environment. We conclude, however, that the Board did not err in approving the AJ's decision to limit the evidence received to the 30-day suspension. The Board found that the evidence supported this penalty for a third credit card-related transgression. This finding is supported by substantial evidence, and is affirmed.[2]

### AFFIRMED

No costs.

---

[2]    We deny Mr. Salerno's motions for temporary relief (Docket Entries 18 and 20).