NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SUSAN J. HILLER,**
*Petitioner*

**v.**

**DEPARTMENT OF HOMELAND SECURITY,**
*Respondent*

---

2018-1244

---

Petition for review of the Merit Systems Protection Board in No. AT-1221-16-0687-W-1.

---

Decided: April 22, 2019

---

MICHAEL W. MACOMBER, Tully Rinckey PLLC, Albany, NY, argued for petitioner.

ERIC E. LAUFGRABEN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by JOSEPH H. HUNT, ROBERT E. KIRSCHMAN, JR., ALLISON KIDD-MILLER.

---

Before HUGHES, SCHALL, and STOLL, *Circuit Judges*.

HUGHES, *Circuit Judge*.

Susan J. Hiller appeals from a decision of the Merit Systems Protection Board finding that the government proved by clear and convincing evidence that, even absent any whistleblowing activity, it would have eliminated Ms. Hiller's position and reassigned her to a new one. *See Hiller v. Dep't of Homeland Sec.*, No. AT-1221-16-0687-W-1, 2017 WL 3872700 (M.S.P.B. Aug. 30, 2017). Because substantial evidence supports the Administrative Judge's determination, and because we find no abuse of discretion in his procedural rulings, we affirm.

I

Ms. Hiller worked as a full-time attorney-instructor at the Office of Training and Development (OTD) at the Immigration and Customs Enforcement Academy in Charleston, South Carolina. She, along with a contract attorney in Charleston and nine full-time attorney-instructors in Glynco, Georgia, taught section 287g and other basic legal classes[1] to law enforcement officers. In 2011, Ms. Hiller filed complaints with the Office of Inspector General and the Office of Special Counsel about workplace safety concerns and the misuse of government vehicles.

In January 2012, the Training Division of the Office of Principal Legal Advisor (OPLA) took over management of the attorney-instructors. As part of the transition, OPLA officials visited Charleston and Glynco to assess workload. Based on their visit, they recommended decreasing the number of attorney-instructors. OPLA's General Law

---

[1]    In section 287g classes, attorney-instructors train officers on the "statutory provision which permits deputizing state and local law enforcement officials for federal service." J.A. 2.

Director, Michael Cameron, agreed, and on May 1, 2012, he informed Ms. Hiller that the agency was eliminating her position and reassigning her to Charlotte, North Carolina. OPLA did not directly reassign any other attorney-instructors, but Ms. Hiller was not the only one to leave her position. OPLA let the contract attorney's contract expire, and several attorney-instructors in Glynco voluntarily transferred to other locations.

In September 2012, Ms. Hiller filed a complaint with the Office of Special Counsel protesting her reassignment. She alleged that the agency reassigned her in retaliation for the protected disclosures she had made in 2011, thereby violating the Whistleblower Protection Act. The Office of Special Counsel terminated its investigation in May 2016.[2] Ms. Hiller appealed to the Board and requested corrective action.

Twice during discovery, the Administrative Judge granted motions to suspend case processing. The second time, on May 12, 2017, the Administrative Judge noted that, when the case resumed on June 11, the deadline for pre-hearing submissions would be July 24 and the hearing would occur on August 9–10. He also stated that he would "issue a detailed hearing order" about the pre-hearing

---

[2] Under 5 U.S.C. § 1214(a)(3), an employee must exhaust her remedies with the Office of Special Counsel before appealing to the Board. An employee exhausts her remedies with the Office of Special Counsel when (1) she has received written notification that the Office of Special Counsel has terminated its investigation into her complaint or (2) 120 days have passed since she filed her complaint and she has not received written notification from the Office of Special Counsel that it will investigate her claims. *Id.*

submissions "[a]fter the resumption of case processing."
J.A 60.

The promised hearing order issued on July 19. It required the parties to submit a statement of facts and issues, a list of agreed-upon material facts, a witness list, and an exhibit list by the deadline of July 24. Because she was out of state on vacation and the order gave only five days to prepare evidence, Ms. Hiller moved to extend the submission deadline until September 15 and to continue the hearing until September 27–29. Alternatively, she moved to extend the time to submit her witness list, subpoena requests, and evidence list until August 4. The Administrative Judge partially granted her motion. He moved the deadline for the exhibit list to August 4 and the deadline for all other pre-hearing submissions to July 26. He denied her request for a continuance of the hearing date, however, because he had "provided the general adjudication schedule for this appeal to the parties" months earlier. J.A. 75.

Although Ms. Hiller submitted a timely statement of facts and issues, she failed to file a witness list or a request for subpoenas before the July 26 deadline. At a telephone status conference on July 31, the Administrative Judge ruled that, given the omission, Ms. Hiller could only call herself as a witness. The next day, she moved for additional time to submit her witness list and alleged that she had good cause for missing the deadline. Noting that he had already granted her an extension once, the Administrative Judge denied her motion. Despite this ruling, Ms. Hiller submitted a witness list along with a motion for the Administrative Judge to accept her late filing on August 2. Finding that "nothing prevented the appellant from timely submitting a witness list or subpoena requests but her own garden-variety neglect," the Administrative Judge rejected the filing and motion on August 7. J.A. 121.

Following the August 9 and 10 hearing, the Administrative Judge issued an initial decision. He found that Ms. Hiller had shown by preponderant evidence that she had engaged in whistleblowing activity and that her protected disclosures were a contributing factor in her reassignment. He ultimately concluded, however, that her claim failed because the agency proved, by clear and convincing evidence, that it would have taken the same action even absent her protected disclosures. He therefore denied her request for corrective action.

Ms. Hiller now appeals.[3] She argues that the Administrative Judge abused his discretion and denied her a fair hearing by preventing her from calling other witnesses and declining to continue the hearing. She also contends that we should reverse the Board's decision on the merits because the government did not meet its burden of proof about whether it would have taken the same personnel action absent her whistleblowing activity. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

II

We review the rulings of an Administrative Judge on procedural matters and evidentiary issues for abuse of discretion. *Curtin v. Office of Pers. Mgmt.*, 846 F.2d 1373, 1378–79 (Fed. Cir. 1988); *see also Whitmore v. Dep't of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012). Even if we find that the Administrative Judge abused his discretion, however, we will not overturn his decision unless the error caused substantial harm or prejudice to the employee's rights. *Curtin*, 846 F.2d at 1379.

---

[3] The initial decision became final after Ms. Hiller elected not to pursue further review before the Board. *See* 5 C.F.R. § 1201.113. We therefore treat the initial decision as the Board's final decision for this appeal.

A.

We first address whether the Administrative Judge abused his discretion by denying Ms. Hiller the opportunity to call witnesses during her hearing. Ms. Hiller contends that the inability to call witnesses denied her the statutory right to a fair hearing. She alleges that, because she had good cause to request an extension to the witness list deadline, the Administrative Judge erred in not granting her "eminently reasonable request" for additional time. *See* Pet. Br. 19–20.

We find that the Administrative Judge did not abuse his discretion. Ms. Hiller learned as early as May 12 that her pre-hearing submissions would be due on July 24. While she did not receive specific details about those submissions until July 19, she knew well before the deadline that it fell during a week in which she planned to take vacation. When she left for that vacation, moreover, she knew that the Administrative Judge had not yet issued the promised detailed order and thus knew that the submissions might include unexpected information. If she had concerns about not having enough time to submit her pre-hearing submissions, she could have requested a continuance before leaving, postponed her vacation, or otherwise established a contingency plan to ensure she would meet the deadline. In short, Ms. Hiller herself created the circumstances under which she missed the filing deadline for her witness list.

Ms. Hiller alleges that this case parallels *Kennedy v. Military Sealift Command*, 24 M.S.P.R. 96 (1984), in which the Board reversed a presiding official's decision to deny an appellant's motion for a postponement to obtain the presence of witnesses. *Id.* at 99. We, however, find *Kennedy* inapposite. In *Kennedy*, the Board found it significant that, although the appellant's request for witnesses was untimely, *id.* at 97, he had only learned the deadline two days ahead of time and missed it by one day, *id.* at 98–99. Here,

in contrast, Ms. Hiller learned of the July 24 deadline for pre-hearing submissions months in advance. She knew that it fell during a week when she planned to take vacation, but she waited to request an extension. Under the circumstances, the fact that she only received notice of the specific contents of the pre-hearing submissions five days before the initial deadline (and one week before the revised deadline) does not place her within *Kennedy*.

Ms. Hiller alternatively implies that she did not fail to submit a timely witness list because her statement of facts referenced the individuals she proposed to call as witnesses. She argues that the Administrative Judge had "all of the information needed to request witnesses." Pet. Br. 21. But we have held that an Administrative Judge has no duty to pour through a statement of facts to identify potential witnesses or the nature of their testimony on behalf of one of the parties. *See Whitmore*, 680 F.3d at 1369 (refusing to find an administrative judge abused her discretion in excluding a witness because the appellant had not timely submitted a detailed summary of that witness's proposed testimony). The Administrative Judge thus did not err in finding that Ms. Hiller's pre-hearing submissions did not sufficiently identify the witnesses she intended to call.

## B.

We next consider whether the Administrative Judge abused his discretion by denying Ms. Hiller's motion to continue the hearing. Ms. Hiller asserts that she had good cause to request a continuance because the government served her with thousands of documents while she was on vacation. She argues that the Administrative Judge's failure to grant her request deprived her of the ability to prove her case.

We find no abuse of discretion in the Administrative Judge's decision. Ms. Hiller learned that her hearing would take place on August 9 and 10 as early as May 12. The government notified her on June 14 that it planned to

turn over documents intermittently. If she anticipated needing until September to prepare for the hearing, she could have postponed her vacation or requested a continuance when she first received notice of these plans. Instead, she chose to wait until the Administrative Judge issued his hearing order on July 19.

Ms. Hiller suggests that the Administrative Judge should have postponed her hearing because the Board has granted continuances in similar cases. In *Bloom v. Department of the Army*, 101 M.S.P.R. 79 (2006), for example, the Board determined that an Administrative Judge abused her discretion when she refused to grant an appellant's motion for a continuance. *Id.* at 83. The Board found it significant that the Administrative Judge based her denial on a misinterpretation of the rationale behind appellant's request. *Id.* Although the Administrative Judge thought the appellant wanted a continuance to investigate, the appellant's request instead pertained to "her need for legal representation to adequately respond to the [court's] show-cause order" on jurisdiction. *Id.*

*Bloom* is not analogous to these facts. Ms. Hiller moved for a continuance when she learned details related to a set of deadlines that the Administrative Judge had established more than two months earlier. There is no indication that, in denying her motion, the Administrative Judge misunderstood the rationale behind her request or that he otherwise failed to give her request adequate consideration. Indeed, the fact that he partially granted her motion suggests that he seriously considered the substance of her arguments and need for an extension. Thus, even if we adopted the reasoning of *Bloom*, we would not find that the Administrative Judge abused his discretion.

## III

Finally, we address the merits of the Administrative Judge's decision. We affirm the decisions of the Board unless they are "(1) arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703; *see also Hayes v. Dep't of the Navy*, 727 F.2d 1535, 1537 (Fed. Cir. 1984). To withstand substantial error review, "[t]he record need only disclose such relevant evidence as might be accepted by a reasonable mind as adequate to support the conclusion reached." *Hayes*, 727 F.2d at 1537.

The Whistleblower Protection Act "prohibits any federal agency from taking, failing to take, or threatening to take or fail to take, any personnel action" against an employee for making a protected disclosure. *Fellhoelter v. Dep't of Agric.*, 568 F.3d 965, 970 (Fed. Cir. 2009); *see also* 5 U.S.C. § 2302(b)(8). To establish a prima facie case under the Act, an employee must show by preponderant evidence that she made a protected disclosure and that this disclosure was a contributing factor in the personnel action. *See Fellhoelter*, 568 F.3d at 970. If the employee successfully establishes a prima facie case, the agency has the opportunity to prove, by clear and convincing evidence, that it would have taken the same personnel action absent any protected disclosures. *Id.* at 970–71. The Board considers three factors to determine if the agency has rebutted the employee's prima facie case: (1) "the strength of the agency's evidence in support of its personnel action," (2) "the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision," and (3) "any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated." *Carr v. Soc. Sec. Admin.*, 185 F.3d 1318, 1323 (Fed. Cir. 1999).

The Administrative Judge denied Ms. Hiller's request for corrective action because he found that the government proved by clear and convincing evidence that it would have taken the same personnel action absent any whistleblowing activity. Substantial evidence supports this decision.

First, the record shows that the amount of work available did not justify the number of attorney-instructors employed by the agency. *See Carr*, 185 F.3d at 1323. The government suggested, for example, that the agency had cancelled many of its section 287g classes during the preceding two years because too few students had enrolled. *See* J.A. 1813–14, 1829, 1833–34, 2021–22. OPLA officials also reported that, although attorney-instructors claimed to have enough work, much of what they did appeared to be "make up work" generated to give them the appearance of being busy. J.A. 11–12.

Recognizing that her section 287g classes alone might not justify full-time employment, Ms. Hiller contends that she could have taught other classes in addition to the section 287g classes. The Administrative Judge, however, found that Ms. Hiller had refused prior attempts by management officials to diversify her workload, and the record supports this determination.[4] Ms. Hiller, for instance, protested being assigned classes such as vehicle stops and removals because, among other reasons, it constituted a "change in working conditions" as she "d[id] not teach th[ese] class[es]." J.A. 1775–77. She stated that, while she "welcome[d] new classes," she "just d[id] not have the time to handle them" given her slate of section 287g classes. J.A. 1772. Based on her reaction, the agency determined "not [to] ask her to participate any further" with its plans to

---

[4]    Even if the record were less clear, we would still uphold the Administrative Judge's determination. We agree that the assessment of whether other classes would provide Ms. Hiller with enough work was a business decision which properly rested with the agency. *See Hayes*, 727 F.2d at 1537 (cautioning that agencies generally have broad discretionary authority and that this court should not place itself "in the shoes of the agency and second-guess" its decisions).

offer other courses. J.A. 1977. Given this record, the Administrative Judge's determination that Ms. Hiller resisted workload diversification is supported by substantial evidence.

Second, the record shows that Mr. Cameron, OPLA's General Law Director and the deciding official, had no retaliatory motive against Ms. Hiller. *See Carr*, 185 F.3d at 1323. Ms. Hiller asserts that the Administrative Judge's decision rests solely on the determination that OPLA officials did not owe OTD officials any favors. We disagree. Many circumstances factored into the Administrative Judge's finding. For example, the Administrative Judge found it significant that the OPLA officials credibly denied that the whistleblowing activity influenced their recommendations and that only one of them—and one not responsible for taking the personnel action—had even received notice of the whistleblowing. Ms. Hiller, moreover, failed to introduce any evidence showing that the OPLA management officials personally disliked her or had any reason to act on the animus of OTD officials, and as we have explained in the past, "it is 'the existence of any motive to retaliate on the part of the *agency officials* who were involved in the decision [to take disciplinary action]' that is to be considered," not the retaliatory motive of others. *See Carr*, 185 F.3d at 1326 (quoting *Geyer v. Dep't of Justice*, 70 M.S.P.R. 682, 687 (1996)) (alteration in original); *see also Whitmore*, 680 F.3d at 1371–72.

Third, the record shows that non-whistleblowers faced adverse employment actions like reassignment. *See Carr*, 185 F.3d at 1323; *see also Whitmore*, 680 F.3d at 1373–74. Ms. Hiller was not the only attorney-instructor to lose her position. Although the agency did not directly reassign any other attorney-instructor, it decreased the total number of attorney-instructors during this time. It allowed the contract attorney's contract to expire, and several attorney-instructors voluntarily transferred to other positions. The

agency did not replace any of these departing attorney-instructors.

In sum, we find that substantial evidence supports the Administrative Judge's determination that, based on the *Carr* factors, the government showed by clear and convincing evidence that it would have taken the same action absent any whistleblowing activity.

## IV

We have considered Ms. Hiller's remaining arguments and find them unpersuasive. Because we find that the Administrative Judge did not abuse his discretion and that substantial evidence supports his determination that the government had proved by clear and convincing evidence that it would have taken the same personnel action even absent Ms. Hiller's whistleblowing activity, we affirm.

## AFFIRMED

No costs.