**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

WILLIAM COY,
           Appellant,

      v.

DEPARTMENT OF THE TREASURY,
           Agency.

DOCKET NUMBER
DC-0752-18-0528-I-1

DATE: July 5, 2023

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Alexis N. Tsotakos</u>, Esquire, and <u>Christopher H. Bonk</u>, Esquire, Silver Spring, Maryland, for the appellant.

<u>Christopher Sterbenz</u>, <u>Gabriel A. Hindin</u>, and <u>Michael Morelli</u>, Washington, D.C., for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

## REMAND ORDER

¶1      The agency has filed a petition for review and the appellant has filed a cross petition for review of the initial decision, which reversed the appellant's removal on due process grounds and concluded that the appellant did not prove any of his reprisal claims. For the reasons discussed below, we DENY the petition for

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

review and the cross petition for review. We AFFIRM the administrative judge's decision to reverse the removal on due process grounds. We further MODIFY the administrative judge's analysis of the appellant's claim of reprisal for whistleblowing disclosures and protected activity (filing Office of Special Counsel (OSC) complaints), still finding that the appellant did not prove these claims. We VACATE the administrative judge's analysis of the appellant's claims of reprisal for prior equal employment opportunity (EEO) activity and for filing an appeal pursuant to the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA), and we REMAND these claims to the Washington Regional Office for notice and further adjudication in accordance with this Remand Order. We also DENY the appellant's petition to enforce the administrative judge's interim relief order.

## BACKGROUND

¶2    The following facts, as recited in the initial decision, are generally undisputed. Initial Appeal File (IAF), Tab 38, Initial Decision (ID). The appellant filed a USERRA appeal in which he asserted that his starting salary as a Supervisory Human Capital Specialist (Director of Compensation and Benefits), should have been increased because of his status as a military veteran. ID at 3; *Coy v. Department of the Treasury*, MSPB Docket No. DC-4324-17-0272-I-1. During the appellant's sworn deposition in the USERRA appeal, the agency learned that he used his status as an agency employee to access agency electronic systems to misappropriate confidential employee data, which he emailed to his home computer and used to prosecute lawsuits against the agency. ID at 3-4. The administrative judge dismissed the USERRA appeal as withdrawn in May 2017. ID at 4. However, the agency determined that the appellant's admission of such misconduct had formed the factual basis for a removal action, and it removed him on a single charge of misuse of Government property supported by three specifications. ID at 3-4.

¶3 The appellant filed a Board appeal and raised claims of a due process violation, harmful procedural error, and reprisal for prior EEO activity, for his OSC complaints, and for his prior USERRA appeal. ID at 4; IAF, Tab 1. He subsequently withdrew his hearing request. ID at 1-2; IAF, Tabs 29-30. In the initial decision, the administrative judge reversed the removal action on due process grounds. ID at 4-13. In particular, the administrative judge noted that the deciding official, in her deposition, identified numerous facts regarding the appellant's alleged performance deficiencies that she considered in the penalty analysis that were not specifically articulated in the proposal notice or decision letter. ID at 9-13. The administrative judge determined in the alternative that the appellant proved his claim of harmful procedural error. ID at 13. The administrative judge further found that the appellant did not prove any of his reprisal claims. ID at 13-18. The administrative judge ordered the agency to cancel the removal action and retroactively restore the appellant, effective April 13, 2018, and pay him the appropriate amount of back pay with interest and other adjustments. ID at 19. The administrative judge also ordered the agency to provide interim relief if either party filed a petition for review. ID at 20.

¶4 The agency has filed a petition for review, and the appellant has filed a response. Petition for Review (PFR) File, Tabs 1, 3. The appellant has filed a cross petition for review, to which the agency has filed a response. PFR File, Tabs 3, 7. The appellant has also filed a petition to enforce the interim relief order, the agency has responded to this petition, and the appellant has replied. PFR File, Tabs 5-6, 8-10.

¶5 While this matter was pending on review, the agency removed the appellant based on the same misuse of Government property charge and specifications, effective December 28, 2019, and a different administrative judge sustained this second removal action. *Coy v. Department of the Treasury*, MSPB Docket No. DC-0752-20-0325-I-1, Initial Decision (Apr. 15, 2021). The U.S. Court of Appeals for the Federal Circuit (Federal Circuit) found that the second removal

action was permissible while the first removal action was still pending before the Board because the second removal action cured the procedural deficiency of the first removal action and did not "evade" the first decision, and it upheld the removal. *Coy v. Department of the Treasury*, 43 F.4th 1334, 1337-40 (Fed. Cir. 2022).

## DISCUSSION OF ARGUMENTS ON REVIEW

We affirm the administrative judge's decision to reverse the removal on due process grounds.

¶6    In the initial decision, the administrative judge made the following findings: (1) the deciding official's consideration of the appellant's subordinates' concerns about his management style and/or competence and the deciding official's own concerns about his performance deficiencies were not raised in either the proposal or decision letters; (2) the appellant never had a chance to respond to or address these considerations before the removal was effected; (3) these considerations were not cumulative; and (4) they were the type of information likely to result in pressure on the deciding official to rule in a particular manner. ID at 9-12. The administrative judge therefore concluded that the deciding official's consideration of such information without notice to the appellant violated his due process rights. ID at 4-13. She also determined in the alternative that the deciding official's consideration of such evidence amounted to harmful procedural error. ID at 13.

¶7    In its petition for review, the agency argues that the administrative judge erred when she determined that the deciding official violated the appellant's due process rights when she considered his job performance in setting the penalty, the appellant knew that the deciding official would consider his job performance because the proposing official told him so, and the administrative judge incorrectly applied the rule on ex parte communications. PFR File, Tab 1 at 6-7. The agency also contends that the administrative judge's harmful procedural error analysis was erroneous. *Id.* at 7-8.

¶8      The U.S. Court of Appeals for the Federal Circuit has held that, "[t]he introduction of new and material information by means of ex parte communications to the deciding official undermines the public employee's constitutional due process guarantee of notice (both of the charges and of the employer's evidence) and the opportunity to respond." *Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1377 (Fed. Cir. 1999).  Not every ex parte communication is a procedural defect so substantial and so likely to cause prejudice that it undermines the due process guarantee and entitles the claimant to an entirely new administrative proceeding; rather, only ex parte communications that introduce new and material information to the deciding official will violate the due process guarantee of notice.  *Id.*  The Board will consider the following factors, among others, to determine whether an ex parte contact is constitutionally impermissible:   (1) whether the ex parte communication merely introduces "cumulative" information or new information; (2) whether the employee knew of the error and had a chance to respond to it; and (3) whether the ex parte communications were of the type likely to result in undue pressure upon the deciding official to rule in a particular manner.  *Id.* at 1377.  Ultimately, the inquiry of the Board is whether the ex parte communication is so substantial and so likely to cause prejudice that no employee can fairly be required to be subjected to a deprivation of property under such circumstances.  *Id.*  The Board has held that this analysis applies to penalty considerations.  *Wilson v. Department of Homeland Security*, 120 M.S.P.R. 686, ¶ 9 (2014), *aff'd*, 595 F. App'x 995 (Fed. Cir. 2015).  For the following reasons, we agree with the administrative judge that the agency violated the appellant's due process rights.

¶9      In the proposal notice, the proposing official advised the appellant that she considered his job performance, among other things.  IAF, Tab 5 at 83.  In the decision letter, the deciding official noted that she considered the appellant's "lack of any prior disciplinary record," "[his] record of job performance," and "[his] 15 years of Federal service."  *Id.* at 15.  However, during her deposition,

the deciding official testified that she considered that his "direct reports were all very, very upset," "had significant concerns about [him]," and "many felt very demoralized by him, not supported, no engagement on actually understanding the programs and . . . what our processes are." IAF, Tab 32 at 311-12 (deposition testimony of the deciding official).

¶10     We have considered the agency's contention that the appellant had notice that his job performance would be considered. We agree that the appellant did have general notice that his job performance would be considered, and he stated in his response to the notice of proposed removal that he had a "sterling" 15-year record of Federal service and noted that his supervisors across "multiple agencies . . . unanimously elected to rate him at the highest performance level available." IAF, Tab 5 at 50. However, there is little, if any, evidence that the appellant had any meaningful knowledge of any of the subordinates' stated concerns or that the agency would rely on such concerns in its decision. Notably, it is undisputed that the appellant did not have an annual performance appraisal due to his short tenure at the agency. IAF, Tab 32 at 315 (deposition testimony of the deciding official), 492 (sworn declaration of the appellant). Moreover, in his declaration, made under penalty of perjury, the appellant stated that his midyear evaluation was "meets performance standards,"[2] at no point did the proposing official (who was also his first-line supervisor) or the deciding official ever tell him that they had any concerns about his performance, and the first time he became aware of performance concerns was after he reviewed the deciding official's deposition. IAF, Tab 32 at 492.

¶11     We have considered the proposing official's deposition testimony that she held "at least four" meetings between February 2017 and April or May 2017 with the appellant and the two subordinate managers who complained about him, and

---

[2] According to the appellant, the two rating options for the midyear review were something to the effect of "meets performance standards" and "does not meet performance standards at this time." IAF, Tab 32 at 492.

she suggested that the appellant retain an executive coach. IAF, Tab 32 at 134-35, 139-40 (deposition testimony of the proposing official). However, the agency presented no documentary evidence or written communications that would advise the appellant that the agency had any significant concerns about his performance.[3] Therefore, we are not persuaded that the appellant had sufficient notice that any such concerns would be considered in this removal action. Indeed, the Board has found that a deciding official's similar consideration of performance-related information not specified in the decision letter constituted a due process violation. *See, e.g.*, *Howard v. Department of the Air Force*, 118 M.S.P.R. 106, ¶ 6 (2012) (finding that a deciding official's consideration of ex parte information regarding the appellant's audit production numbers being lower than the agency's individual production goal for a single year and his general poor performance was not cumulative because it concerned specific information of alleged performance deficiencies); *Silberman v. Department of Labor*, 116 M.S.P.R. 501, ¶ 12 (2011) (explaining that ex parte communications are plainly material when the deciding official has admitted that the information influenced her penalty determination).

¶12      Accordingly, we affirm the administrative judge's decision to reverse the removal on due process grounds. We need not reach the issue of whether the

---

[3] In its petition for review, the agency includes an unsigned, undated document, entitled "Notes on [the appellant]," which appears to have been written by the proposing official and which appears to document a summary of meetings that purportedly occurred between managers, the proposing official, and the appellant about his competency and management style. PFR File, Tab 1 at 32-33. The agency indicates that it provided such evidence to the appellant during discovery. *Id.* at 21-22 & n.65. Under 5 C.F.R. § 1201.115, the Board will not generally consider evidence submitted for the first time with the petition for review absent a showing that it was unavailable before the record was closed despite the party's due diligence. *Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 214 (1980). We are not persuaded that this unsigned and undated document, in the absence of any corresponding contextual information, warrants any further consideration.

agency also committed harmful procedural error.[4]  *Alford v. Department of Defense*, [118 M.S.P.R. 556](), ¶ 7 & n.4 (2012); *Silberman*, [116 M.S.P.R. 501](), ¶ 4 n.3.

We modify the initial decision to supplement the administrative judge's analysis of the appellant's claim of reprisal for filing OSC complaints, but a different outcome is not warranted.

¶13        In his cross petition for review, the appellant reiterates that his December 2016 OSC complaint was protected by [5 U.S.C. § 2302](b)(8)(B) and his November 30, 2017 OSC Complaint, which he filed after the agency proposed his removal, was protected by section 2302(b)(9)(C).  PFR File, Tab 3 at 23; IAF, Tab 32 at 531-42.  The administrative judge gave the appellant proper notice of his burden to prove this claim of reprisal, and the record is fully developed on these issues; therefore, it is appropriate to address these arguments on review.  Based on our review of the record, as explained below, we affirm the administrative judge's finding that the December 2016 OSC complaint was not protected by [5 U.S.C. § 2302](b)(8)(B).[5]  We modify the initial decision to alternatively consider whether the appellant's December 2016 OSC complaint is protected by [5 U.S.C. § 2302](b)(9)(C)[6] and to evaluate his claim regarding his

---

[4] In addition, because we are reversing the agency's action on due process grounds we need not determine whether the agency proved the charge or make other merits findings, as those issues are not material.

[5] Section 2302(b)(8)(B) makes it a prohibited personnel practice "to take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee or applicant for employment because of any disclosure to the Special Counsel, or to the Inspector General of an agency or another employee designated by the head of the agency to receive such disclosures, of information which the employee or applicant reasonably believes evidences . . . any violation (other than a violation of this section) of any law, rule, or regulation, or . . . gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety."

[6] Section 2302(b)(9)(C) makes it a prohibited personnel practice "to take or fail to take, or threaten to take or fail to take, any personnel action against any employee or applicant for employment because of . . . cooperating with or disclosing information to the Inspector General (or any other component responsible for internal investigation or

November 30, 2017 OSC complaint. For the following reasons, a different outcome is not warranted.

*December 2016 OSC Complaint*

¶14 The administrative judge determined that the appellant's December 2016 OSC complaint, in which he alleged that the agency violated the Equal Pay Act and its own internal processes in its salary-setting decisions, did not constitute a whistleblowing disclosure under 5 U.S.C. § 2302(b)(8)(B). ID at 14-18; IAF, Tab 32 at 531-42. She noted that the agency's failure to set his pay consistent with salary-setting policy decisions is not a claim that the agency violated a law, rule, or regulation. ID at 18. Additionally, she concluded that he did not reasonably believe that the agency violated the Equal Pay Act because his salary was set at a rate less than his peers in the private sector and that his allegations were conclusory. *Id.* She found in the alternative that, even if the appellant satisfied his prima facie burden, the agency proved by clear and convincing evidence that it would have removed him in the absence of any protected disclosure. ID at 14-18.

¶15 We discern no error with the administrative judge's evaluation of the December 2016 OSC complaint pursuant to 5 U.S.C. § 2302(b)(8)(B). Notably, the Equal Pay Act, found at 29 U.S.C. § 206(d)(1),expressly prohibits wage discrimination between employees on the basis of sex. The appellant's contention that his pay was set at a rate lower than "national and local rates paid by employers in the private sector," IAF, Tab 32 at 533, does not demonstrate that he had a reasonable belief that he was disclosing a violation of the Equal Pay Act. The appellant's petition for review does not persuade us that the administrative judge erred in her findings regarding this claim.

---

review) of an agency, or the Special Counsel, in accordance with applicable provisions of law."

¶16     Although not raised by the appellant below or on review, IAF, Tab 32 at 34; PFR File, Tab 3 at 23, we have considered whether the appellant's December 2016 OSC complaint could constitute activity protected by 5 U.S.C. § 2302(b)(9)(C), which states that it is a prohibited personnel practice to, among other things, take a personnel action against any employee because of "disclosing information to . . . the Special Counsel, in accordance with applicable provisions of law." In contrast to the provision at subsection 2302(b)(8)(B), which requires proof of a disclosure to OSC of a reasonable belief of any violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health of safety to be protected, section 2302(b)(9)(C) imposes no requirements on the content of the appellant's communications with OSC, *see, e.g.*, *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶ 62 (finding that section 2302(b)(9)(C) covers employee disclosures to OSC regardless of content). We conclude that the appellant's December 2016 OSC complaint is protected by 5 U.S.C. § 2302(b)(9)(C).

¶17     We next consider whether the protected activity was a contributing factor in the removal action. One way of proving that an appellant's prior protected activity was a contributing factor in a personnel action is the "knowledge/timing" test. *See Shibuya v. Department of Agriculture*, 119 M.S.P.R. 537, ¶ 22 (2013). Under this test, an appellant can establish that his prior protected activity was a contributing factor in the challenged action by showing that the deciding official knew of the protected activity and took the personnel action within a period of time such that a reasonable person could conclude that the protected activity was a contributing factor in the action. *Id.*; *See also Alarid v. Department of Army*, 122 M.S.P.R. 600, ¶ 13 (2015).

¶18     The appellant asserted below and on review that OSC contacted the agency as part of its investigation into his December 2016 complaint, and he speculated that the proposing and deciding officials had knowledge of this complaint. IAF,

Tab 32 at 490; PFR File, Tab 3 at 24. He does not cite to, and we are not aware of, any evidence that the proposing or deciding officials had any actual knowledge of the December 2016 OSC complaint; his speculation on this issue does not constitute preponderant evidence in this regard.

¶19    However, an appellant may show that his protected activity was a contributing factor by proving that the official taking the action had constructive knowledge of the whistleblowing disclosure or activity, even if the official lacked actual knowledge. *Nasuti v. Department of State*, 120 M.S.P.R. 588, ¶ 7 (2014). An appellant may establish constructive knowledge by demonstrating that an individual with actual knowledge of the disclosure or activity influenced the official accused of taking the retaliatory action. *Id*.

¶20    The Board's electronic records reflect that the appellant filed an individual right of action (IRA) appeal in which he specifically identified his December 2016 OSC complaint as the relevant disclosure, and the appeal was dismissed for lack of jurisdiction in February 2017. *Coy v. Department of the Treasury*, MSPB Docket No. DC-1221-17-0278-W-1, Initial Decision (Feb. 9, 2017). The agency was represented by counsel in the IRA appeal, the proposing official testified in her deposition that she "worked with the legal office to put [the September 20, 2017 notice of proposed removal] together," and the deciding official likewise testified in her deposition that she worked with the "attorneys" regarding questions about the notice of proposed removal and the process of drafting the decision to remove the appellant. IAF, Tab 32 at 93 (deposition testimony of the proposing official), 264-65, 333 (deposition testimony of the deciding official). In fact, the deciding official testified in her deposition that the "attorneys . . . do a first version" of the decision letter, which she then edited. *Id.* at 297 (deposition testimony of the deciding official). Based on this evidence, we find for the purposes of our analysis that, through the agency's counsel, the proposing and deciding officials had constructive knowledge of the December 2016 OSC complaint. *See, e.g.*, *Cahill v. Merit Systems Protection Board*,

821 F.3d 1370, 1374 (Fed. Cir. 2016) (stating that "when read with an eye on likely inferences appropriate to the context, Mr. Cahill's allegations are sufficiently specific and plausible to constitute nonfrivolous assertions that at least one, and perhaps three, of the officials charged with the personnel actions at issue attended the March 2012 meeting or at least knew what Mr. Cahill disclosed there."); *Jessup v. Department of Homeland Security*, 107 M.S.P.R. 1, ¶ 10 (2007) (finding that the appellant nonfrivolously alleged that his disclosure was a contributing factor in the agency's decision to remove him based on his claim that the agency decision makers either knew of the disclosure via the Chief of Staff or were influenced by the Chief of Staff who knew of the disclosure).[7]

¶21        Having found that the knowledge element is satisfied, we now turn to the timing element of the knowledge/timing test. The record reflects that the agency proposed the appellant's removal on September 20, 2017, and his removal was effected on April 13, 2018. IAF, Tab 5 at 14, 82. The Board has held that a personnel action taken within approximately 1 to 2 years of the appellant's disclosures satisfies the knowledge/timing test. *Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶ 21 (2015). Accordingly, we conclude that the appellant has satisfied the knowledge/timing test, and therefore he has met his burden to show that his protected activity was a contributing factor in his removal.

¶22        In determining whether an agency has shown by clear and convincing evidence that it would have taken the same personnel action in the absence of protected activity, the Board will consider the following factors: the strength of the agency's evidence in support of its action; the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the

---

[7] Although *Cahill* and *Jessup* were individual right of action appeals, and the issue was whether the appellant had made nonfrivolous allegations of Board jurisdiction, we find that the principles articulated therein are equally applicable under the circumstances of this matter.

decision; and any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999).

¶23     As explained below, the agency's evidence in support of its action is generally strong.  The misuse of Government property charge requires proof of unauthorized use.  *Diaz v. Department of the Army*, 56 M.S.P.R. 415, 420 (1993). The agency's charge included three specifications alleging that, on March 16, 2017, during a sworn deposition, the appellant stated in pertinent part that he (1) accessed and downloaded personnel data from an Office of the Comptroller for Currency (OCC) system to include, among other things, names, titles, band levels, social security numbers, and service computation dates for 94 employees "for [his] own personal use and without authorization"; (2) accessed and downloaded 80 pages of OCC new hire salary justification rollup information "for [his] own personal use and without authorization"; and (3) emailed the information described in specifications 1 and 2 to his personal email account and stored the information on his personal computer at home, and he was not authorized to remove OCC personnel information from the OCC, transmit such information outside of OCC's networks, or store OCC personnel information on his personal computer.  ID at 3; IAF, Tab 5 at 82.  The administrative judge did not specifically evaluate whether the agency proved the specifications and charge by preponderant evidence; however, in the context of evaluating the appellant's affirmative defenses, the administrative judge stated that she would have sustained the charge and supporting specifications absent her findings on the due process and harmful procedural error issues.  ID at 15-16.

¶24     In his cross petition for review, the appellant makes the following arguments:  (1) he was authorized to access personnel data and new hire salary justification rollup information; (2) he did not email the data described in specifications 1 and 2 to his personal email address or store that information on his personal computer; and (3) his good-faith attempts to comply with the

agency's discovery demands cannot sustain the agency's charge. PFR File, Tab 3 at 11-18.

¶25    In his response to the agency's discovery requests in the USERRA appeal, the appellant referenced as support for his claim an "OCC New Hire Salary Justification Excel Export" and a "Salary listing for all OCC employees who[] are in occupational series 0201, regardless of band level," and he included as attachments "OCC New Hire Salary Justification Rollup from Sharepoint.pdf" and "OCC HC Employee Listing 20170214.pdf." IAF, Tab 32 at 499-500, Tab 33 at 150-231, Tab 35 at 72-74. In his deposition in that matter, the appellant was questioned at length about these documents. IAF, Tab 5 at 124-36 (deposition testimony of the appellant). In pertinent part, the appellant explained that he had created the OCC New Hire Salary Justification Excel spreadsheet by "playing around in the [new hire salary justification SharePoint site,]" "export[ing] all of the information into an Excel worksheet," and adding additional columns of information, such as "recommended base salary including Geo[sic] pay," and "percent increase." *Id.* at 124-25 (deposition testimony of the appellant). Regarding the salary listing chart, the appellant testified that it was a list of all employees in the agency in the 0201 Human Resources Management Occupational Series, and the data itself came from the National Finance Center Reporting Center, which is a database that is accessible to certain Human Capital employees. *Id.* at 126-27 (deposition testimony of the appellant).

¶26    Neither party disputes that the appellant was authorized to access and review generally the personnel data in question as part of his duties. Rather, the ultimate question presented in specifications one and two is whether the appellant's compilation and use of such personnel data for litigation against the agency was authorized.[8]

---

[8] We reject the appellant's contention that specifications 1 and 2 were "limited to whether or not Appellant was authorized to access certain data." PFR File, Tab 3 at 13.

¶27    Importantly, the agency's Appropriate Use of OCC Information Technology (IT) Manual specifically stated that "[a]uthorized purposes are those for which OCC IT resources are issued (e.g., job-related tasks) or those functions authorized in accordance with law or regulation."[9]  IAF, Tab 33 at 136.  We have considered, as described in the attachment to this Manual, that the agency "has a longstanding practice of allowing employees limited use of government IT equipment . . . for personal, nongovernmental purposes during non-work time."  *Id.* at 143.  The agency provided several examples of authorized limited personal use of OCC IT, including such minor tasks as using a calculator or spreadsheet for personal finances, composing or printing a résumé or job application, exchanging emails with friends or family, making internet purchases on a personal charge card, and checking websites for information on personal interests, weather, job vacancies, news, or sporting events.  *Id.*  The agency also provided examples of unauthorized personal use, which include using OCC IT to gain unauthorized access to OCC and other information systems, and creating, downloading, viewing, or storing sexually explicit, threatening, or harassing material.  *Id.*

¶28    The appellant's decision to compile and use the personnel data as described above to support his litigation against the agency was not a job-related task nor was it authorized in accordance with any law or regulation.  Moreover, the appellant's compilation and use of such information for litigation purposes against the agency does not align with the authorized limited personal uses described above.  Finally, we have considered the appellant's argument that his reference to and production of these documents constituted a good-faith attempt to comply with the agency's discovery demands, PFR File, Tab 3 at 17-18, but we are not persuaded that a different outcome is warranted.  The appellant has not cited, and we are unaware of, any exception to the agency's authorized use policy

---

[9] The appellant does not contend that he was unaware of this policy or any other relevant policies.

involving discovery requests in an ongoing litigation matter. For these reasons, we find the evidence in support of specifications 1 and 2 to be strong.

¶29     We now turn to specification 3, which alleged that the appellant testified in his deposition that he emailed the information described in specifications 1 and 2 to his personal email account and stored the information on his personal computer at home, but he was not authorized to remove OCC personnel information from the OCC, transmit such information outside of OCC's networks, or store OCC personnel information on his personal computer. IAF, Tab 5 at 82.

¶30     The appellant testified in his March 16, 2017 deposition that he submitted his response to the agency's discovery requests, which included the aforementioned documents, to the agency by email. *Id.* at 134 (deposition testimony of the appellant). The appellant explained that he originally sent his discovery responses to the agency from his "personal email address," but because the agency attorney did not receive it, he forwarded the documents to the agency attorney from his "OCC email [address]." *Id.* (deposition testimony of the appellant); IAF, Tab 32 at 499-500. The appellant admitted that he was "at home" when he sent the documents to the agency attorney from his OCC email address. IAF, Tab 5 at 134 (deposition testimony of the appellant). The appellant further testified that the electronic version of the files in question were on his OCC computer and his home computer. *Id.* at 135 (deposition testimony of the appellant). The appellant was asked about how the documents ended up on his home computer, and he answered, "I believe I emailed them to myself." *Id.* (deposition testimony of the appellant). Upon further questioning, he indicated that he "[did not] remember how [he] sent them to [him]self," but he "believe[d] [he] emailed them . . . because [he] [did not] have a thumb drive." *Id.* at 136 (deposition testimony of the appellant). The appellant further testified that he "[did not] recall" if he emailed the documents from his OCC email address. *Id.* (deposition testimony of the appellant). When asked if he emailed any other OCC documents to his home email address, he acknowledged that he emailed his

résumé, but he stated that he did not "believe [that he] emailed any OCC documents to [him]self." *Id.* (deposition testimony of the appellant).

¶31     More than 7 months after his deposition, in his response to the notice of proposed removal in this matter, the appellant submitted an October 19, 2017 declaration made under penalty of perjury in which he stated that, after the deposition, he "reviewed [his] recently sent email traffic and was unable to locate any instance of [him] emailing the OCC documents and information referenced in [the] Notice of Proposed Removal[] to [himself] to either [his] home computer or [his] personal email address."[10]   IAF, Tab 5 at 54.   In sum, the appellant's deposition testimony regarding how he obtained and where he stored the documentation in question is not consistent with his subsequent declaration made under penalty of perjury.[11]

¶32     Even if there was some question as to the accuracy of the appellant's original deposition testimony, there is preponderant evidence that the appellant removed OCC personnel information and transmitted OCC personnel information

---

[10] During the pendency of this removal appeal, the appellant submitted a second declaration made under penalty of perjury, on March 14, 2019.  IAF, Tab 32 at 490-93.  In this second declaration, the appellant largely reiterated the statements made in the first declaration.  *Id.*  With respect to the strength of the agency's evidence, however, the Board considers the weight of the evidence as it existed before the agency when it acted.  *Social Security Administration v. Carr,* 78 M.S.P.R. 313, 335 (1998), *aff'd,* 185 F.3d 1318 (Fed. Cir. 1999).  Moreover, to the extent relevant facts are developed on appeal to the Board that the agency had no prior reason to know, such facts would not undercut the agency's otherwise sufficiently clear and convincing evidence that, at the time of the action, its decision would have been the same in the absence of whistleblowing.  *See Yunus v. Department of Veterans Affairs*, 84 M.S.P.R. 78, 82, 84, 85 (1999), *aff'd*, 242 F.3d 1367 (Fed. Cir. 2001).  Accordingly, while we consider the appellant's first declaration, which was submitted before the agency issued the decision to remove the appellant, we find that the second declaration is not relevant to our determination of the strength of the evidence.

[11] The appellant declared under penalty of perjury that he was not given an opportunity to review his deposition testimony, IAF, Tab 5 at 53, and he argues on review that he was unable to correct or clarify any of his deposition testimony, PFR File, Tab 3 at 15-17.  There appears to be some support in the record for this contention.  IAF, Tab 32 at 624.  Although we have considered the appellant's declaration and argument on review, it does not warrant a different outcome.

outside of OCC's networks. The agency points out that the appellant's March 15, 2017 email, which he sent to agency counsel from his OCC work account, had embedded within it a March 14, 2017 email from his personal email account that included as PDF attachments the documents described in specifications 1 and 2. IAF, Tab 35 at 52-53. The appellant's claim in his declaration that he was unable to locate a personal email in which he sent these documents to himself is not credible in light of the appellant's deposition testimony, which was closer in time to the events at issue, and this unrebutted documentary evidence. Accordingly, we find that it is more likely than not that the appellant removed OCC personnel information and transmitted the information outside OCC's networks as charged by the agency. Thus, we find that specification 3 was also supported by strong evidence.[12]

¶33    In sum, we find that the agency was in possession of strong evidence that the appellant committed the conduct underlying the charge of misuse of Government property.[13] In addition, we find that the misconduct was very

---

[12] However, the agency did not clearly show that the appellant stored OCC personnel information on his personal computer, and the appellant's statements on this issue are inconsistent. Thus, the agency's evidence regarding the portion of specification 3 that charged the appellant with storing OCC personnel information on his home computer was relatively weak. IAF, Tab 5 at 82. Nonetheless, overall, the agency's evidence in support of this specification was solid. *Cf. Taylor v. Department of the Army*, 107 M.S.P.R. 638, ¶ 17 & n* (finding no error in sustaining a specification when the agency proved the essence of the specification); *Brown v. U.S. Coast Guard*, 10 M.S.P.R. 573, 578 (1982) (sustaining specification 4B because the agency proved by preponderant evidence the essence of this specification).

[13] Specification 3 contained the same allegations in the first and second removal actions, and the Federal Circuit upheld the administrative judge's decision to sustain specification 3 in the second removal action in its entirety. Regardless of whether the elements of collateral estoppel are met, we decline to apply that doctrine in these circumstances. *See Kroeger v. U.S. Postal Service*, 865 F.2d 235, 239 (Fed. Cir. 1988) (stating that it would not be error to decline to apply collateral estoppel even when its requirements are met); *Hay v. U.S. Postal Service*, 103 M.S.P.R. 167, ¶ 9 (2006) (explaining that the Board may refrain from applying collateral estoppel, even when the requirements have been met, if its application would result in injustice or compromise public policy); *Tanner v. U.S. Postal Service*, 94 M.S.P.R. 417, ¶ 15 (2003) (noting that

serious, particularly considering the appellant's position as Director of Compensation and Benefits, his access to confidential personnel data, and his awareness of agency policies regarding the authorized use of such data. ID at 14-17. Thus, this *Carr* factor strongly favors the agency.

¶34  Regarding the second *Carr* factor, the administrative judge found "no evidence" of a retaliatory motive by any of the managers involved in this action. ID at 15. We modify the initial decision because, even if the proposing and deciding officials had no actual knowledge of the OSC complaint in question, there can still be some motive to retaliate because the appellant's disclosure reflects poorly on the agency. *See, e.g.*, *Whitmore v. Department of Labor*, 680 F.3d 1353, 1370 (Fed. Cir. 2012) ("Those responsible for the agency's performance overall may well be motivated to retaliate even if they are not directly implicated by the disclosures, and even if they do not know the whistleblower personally, as the criticism reflects on them in their capacities as managers and employees."). Thus, this factor slightly favors the appellant.

¶35  Regarding the third *Carr* factor, the deciding official testified in her deposition that she could not recall any cases involving similar unauthorized access of OCC information. IAF, Tab 32 at 324 (deposition testimony of the deciding official). The record does not contain any other evidence showing agency treatment of employees who are not whistleblowers but who are otherwise similarly situated to the appellant.

¶36  The Federal Circuit has stated that *Carr* "imposes no affirmative burden on the agency to produce evidence for each of the three factors." *Rickel v. Department of the Navy*, 31 F.4th 1358, 1365 (Fed. Cir. 2022); *see also Staley v. Department of Veterans Affairs*, No. 2020-2127, 2021 WL 2965007, at *2 (Fed. Cir. July 15, 2021) (per curiam). It has further held that "the absence of any

considerations of public economy and private repose that underlie the doctrine of collateral estoppel must be balanced against the competing interest of fundamental fairness and due process).

evidence relating to *Carr* factor three can effectively remove that factor from the analysis," but that the failure to produce such evidence if it exists "may be at the agency's peril," and "may well cause the agency to fail to prove its case overall." *Whitmore*, 680 F.3d at 1374-75. Under the circumstances here, in which the agency addressed this issue but had no evidence to present, we find that this factor is largely neutral.

¶37 After balancing all of the evidence bearing on the appellant's claim that the action was taken in retaliation for her protected activity, we conclude that the agency has proven by clear and convincing evidence that it would have removed the appellant absent his December 2016 OSC complaint.

*November 30, 2017 OSC Complaint*

¶38 The appellant's November 30, 2017 OSC complaint involved allegations that the proposed removal was taken in retaliation for his earlier OSC complaint and his prior USERRA Board appeal. IAF, Tab 1 at 18-38, Tab 32 at 543-44. The administrative judge did not specifically address this complaint in the initial decision. We do so now. For the reasons explained above, we conclude that the appellant's November 30, 2017 OSC complaint is also protected by 5 U.S.C. § 2302(b)(9)(C). Further, in his supplemental response to the notice of proposed removal, the appellant specifically advised the deciding official that he filed the OSC complaint and that the OSC investigation was ongoing, IAF, Tab 5 at 19, and OSC separately asked the agency's Enterprise Governance Operations office to stay the removal pending an investigation, IAF, Tab 32 at 543-44. The removal was effected on April 13, 2018, IAF, Tab 5 at 14, which satisfies the timing element, *Wadhwa v. Department of Veterans Affairs*, 110 M.S.P.R. 615, ¶ 13, *aff'd*, 353 F. App'x 435 (Fed. Cir. 2009). As a result, we find that the appellant has satisfied his burden to prove contributing factor.

¶39 We also find that the agency proved by clear and convincing evidence that it would have removed the appellant absent his protected activity. As discussed above, the first *Carr* factor strongly favors the agency. Our analysis of the

second *Carr* factor, the existence and strength of the motive to retaliate, more strongly favors the appellant with respect to the November 30, 2017 OSC complaint because the deciding official was named in the complaint, she knew about it, and the appellant's disclosure reflects poorly on her and the agency. *Whitmore*, 680 F.3d at 1370. Our analysis of the third *Carr* factor remains the same. On balance, however, we conclude that the agency established by clear and convincing evidence that it would have taken the removal action absent this OSC complaint.

We remand the appeal for further adjudication of the appellant's claims of retaliation for his prior EEO activity and for his prior USERRA appeal.

¶40    In his cross petition for review, the appellant asserts that the administrative judge erred in finding that the agency did not retaliate against him for his USERRA appeal, for his OSC complaints, or for his prior EEO activity (alleging discrimination and retaliation based on disability, veteran status, race, and color). PFR File, Tab 3 at 4, 20-26.

¶41    In the initial decision, the administrative judge identified the following standard to evaluate these claims: the appellant has to prove by preponderant evidence that he engaged in protected activity under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), and the protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action; if the appellant meets this burden, the agency is given an opportunity to prove by clear and convincing evidence that it would have taken the same personnel action in the absence of the protected activity. ID at 13-14 (citing *Fellhoelter v. Department of Agriculture*, 568 F.3d 965 (Fed. Cir. 2009), and *Webb v. Department of the Interior*, 122 M.S.P.R. 248 (2015)). Notably, however, *Fellhoelter* and *Webb* involved claims of retaliation for whistleblowing disclosures, not retaliation for filing a USERRA appeal or for prior EEO activity. In fact, the standard identified by the administrative judge, by its very language, does not include the appellant's claims

of reprisal for filing a USERRA Board appeal[14] or for his prior EEO activity because neither of them implicate 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). Below, in the order and summary of prehearing conference, the administrative judge noted that the appellant raised claims of reprisal for his prior USERRA appeal and for prior EEO activity, but she did not identify any standard for the former and she utilized an outdated standard for the latter. IAF, Tab 31 at 2-4. Accordingly, because the administrative judge did not give the appellant proper notice of his burden to prove these claims, we remand them to the administrative judge for notice and adjudication.

¶42    We provide the administrative judge and the parties with guidance on remand for analyzing these claims. Below and in his cross petition for review, the appellant relied on a standard applied to claims arising under 5 U.S.C. § 2302(b)(9)(A)(ii), which makes it a prohibited personnel practice to "take . . . any personnel action against an employee . . . because of the exercise of any appeal . . . granted by any law, rule, or regulation . . . other than with regard to remedying a violation of [section 2302(b)(8)]." IAF, Tab 32 at 29-33; PFR File, Tab 3 at 20-23. The appellant has cited to *Mattison v. Department of Veterans Affairs*, 123 M.S.P.R. 492, ¶ 8 (2016), for the proposition that to prevail on an affirmative defense pursuant to 5 U.S.C. § 2302(b)(9)(A)(ii), he must show that (1) he engaged in protected activity, (2) the accused official knew of the activity, (3) the adverse action under review could have been retaliation under the circumstances, and (4) there was a genuine nexus between the alleged retaliation and the adverse action. IAF, Tab 32 at 29-30; *see* PFR File, Tab 3 at 20-23 (analyzing these elements).

---

[14] By the appellant's own admission, his prior USERRA appeal does not involve whistleblowing activity. PFR File, Tab 3 at 20-23 (stating that his appeal is protected by 5 U.S.C. § 2302(b)(9)(A)(ii)).

¶43    However, we find that the appellant's reliance on this standard is misplaced.[15]  In *Brasch v. Department of Transportation*, 101 M.S.P.R. 145, ¶ 6 (2006), the Board explicitly found that the four-prong test set out above is inapplicable to claims of retaliation for prior USERRA Board appeals.  Instead, the Board found that the USERRA standard for retaliation claims is set forth in 38 U.S.C. § 4311(b), (c)(2).  *Id.* Consistent with this precedent, on remand, the administrative judge shall provide the parties with proper notice of the USERRA provisions for claims of retaliation.[16]   Pursuant to 38 U.S.C. § 4311(b), an employer "may not discriminate against or take any adverse employment action against any person because such person . . . has taken an action to enforce a protection afforded any person under this chapter."  If an appellant engages in protected activity described in section 4311(b), an agency violates this section if the appellant's protected activity "is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such person's [protected activity]."  *Burroughs v. Department of the Army*, 120 M.S.P.R. 392, ¶ 7 (2013) (citing 38 U.S.C. § 4311(c)(2)).

¶44    Regarding the appellant's claim of reprisal for prior EEO activity, the record reflects that this activity involved allegations of reprisal and

---

[15] Importantly, *Mattison* does not involve a claim of retaliation for a prior USERRA appeal; rather, it involves Information Security Office and Freedom of Information Act appeals.  *Mattison*, 123 M.S.P.R. 492, ¶¶ 7-8.

[16] In discussing his affirmative defenses, the appellant noted that he also alleged discrimination based on "veteran status."  IAF, Tab 32 at 36.  Although unclear, we have considered whether the appellant intended to make a separate USERRA discrimination claim.  *Loggins v. U.S. Postal Service*, 112 M.S.P.R. 471, ¶ 16 (2009).  The appellant should clarify on remand whether he intended to raise a USERRA discrimination claim in this matter, and the administrative judge should, if necessary, provide proper notice of the appellant's burden to prove such a claim.  *See, e.g.*, *Sheehan v. Department of the Navy*, 240 F.3d 1009, 1013-15 (Fed. Cir. 2001) (finding that, in USERRA actions, an individual must initially show by preponderant evidence that the individual's military status was at least a motivating or substantial factor in the agency action, upon which the agency must prove, also by preponderant evidence, that the action would have been taken for a valid reason despite the protected status).

discrimination based on disability, race, and color. IAF, Tab 32 at 36, 504-24. The Board's analysis of these claims is governed by *Pridgen*, 2022 MSPB 31, ¶¶ 45-47, which was issued after the initial decision in this matter. On remand, the administrative judge should provide notice of the parties' burdens or proof as to these defenses as set out in *Pridgen*.

¶45      After the administrative judge provides proper notice of the appellant's burdens, she may reopen the record to take evidence only related to these claims. She should issue a new initial decision that incorporates our findings herein and her analysis and conclusion regarding these reprisal claims.

We deny the appellant's petition to enforce interim relief.

¶46      When, as here, the appellant was the prevailing party in the initial decision and interim relief was ordered by the administrative judge, a petition for review filed by the agency must be accompanied by a certification that the agency has complied with the interim relief order, either by providing the interim relief ordered, or by making a determination that returning the appellant to the place of employment would cause undue disruption to the work environment. *Elder v. Department of the Air Force*, 124 M.S.P.R. 12, ¶ 18 (2016); 5 C.F.R. § 1201.116(a). In its petition for review, the agency states that it complied with the interim relief order, it includes some documentation showing its efforts to comply with that order, and it advises that the appellant's presence in the workplace presented an undue disruption. PFR File, Tab 1 at 26-30. In the petition to enforce interim relief, however, the appellant asserts that the agency did not pay him dating back to September 11, 2019, the date that the initial decision was issued; rather, he was only paid from October 13 to 26, 2019. PFR File, Tab 5 at 4-7. In its response, the agency acknowledges that there were some processing delays associated with the payment, and it provides an explanation and timeline for when benefits were restored. PFR File, Tab 6 at 5, 8-14, 16. In his reply brief, the appellant argues that the agency did not comply with 5 C.F.R. § 1201.183(a)(1). PFR File, Tab 8.

¶47    The appellant's petition for enforcement is denied because the Board's regulations do not allow for a petition for enforcement of an interim relief order. *Elder*, 124 M.S.P.R. 12, ¶ 20.  We may instead consider the appellant's pleading as a challenge to the agency's certification of compliance.  *Id.*; 5 C.F.R. § 1201.116(b).  However, because we are affirming the administrative judge's decision to reverse the removal on due process grounds, the appellant is receiving a final Board order on the merits in his favor, and the remanded issues have no effect on the appellant's entitlement to appropriate relief in this regard, the agency's compliance with the interim relief order is now a moot issue.  *Elder*, 124 M.S.P.R. 12, ¶ 20; *Cowart v. U.S. Postal Service*, 117 M.S.P.R. 572, ¶¶ 6-7 & n.* (2012).  To the extent that there remain any issues of agency noncompliance with this final decision, the appellant may file a petition for enforcement in accordance with the instructions provided below.

**ORDER**

¶48    For the reasons discussed above, we affirm the administrative judge's decision to reverse the removal on due process grounds.  We also affirm as modified herein her decision that the appellant did not prove his claim of reprisal for his OSC complaints.  We remand the appeal to the Washington Regional Office for proper notice of his burden to prove his claims of reprisal for his prior USERRA appeal and for prior EEO activity, for reopening of the record limited to evidence relating to these claims only, and for further adjudication in accordance with this Remand Order.

¶49    Because we have reversed the appellant's removal, despite the fact that the claims of reprisal for his prior USERRA appeal and for his prior EEO activity must be remanded for further adjudication, we ORDER the agency to cancel the removal and retroactively restore the appellant, effective April 13, 2018.  *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984).  The

agency must complete this action no later than 20 days after the date of this decision.

¶50        We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. Because the court upheld the second removal action against the appellant, which became effective on December 28, 2019, *Coy*, 43 F.4th at 1340, the appellant's entitlement to back pay and other benefits must end no later than December 28, 2019. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶51        We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and to describe the actions it took to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶52        No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision in this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶53     For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached.  The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60–day period set forth above.


FOR THE BOARD:                          /s/ for
                                        _____
                                        Jennifer Everling
                                        Acting Clerk of the Board

Washington, D.C.



| DEFENSE FINANCE AND ACCOUNTING SERVICE |
| Civilian Pay Operations |

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805. Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete. Missing documentation may substantially delay the processing of a back pay award. **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE: Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket. Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled). **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards. **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐ 7) Outside earnings documentation. Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc. Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:** When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received. The payroll office must collect the debt from the back pay award. The annual leave will be restored to the employee. Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



## NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.
2. The following information must be included on AD-343 for Restoration:
   a. Employee name and social security number.
   b. Detailed explanation of request.
   c. Valid agency accounting.
   d. Authorized signature (Table 63).
   e. If interest is to be included.
   f. Check mailing address.
   g. Indicate if case is prior to conversion.  Computations must be attached.
   h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a. Must provide same data as in 2, a-g above.
   b. Prior to conversion computation must be provided.
   c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.